Tagged Opinion



**ORDERED in the Southern District of Florida on March 23, 2007.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 04-41787-BKC-LMI |
| TERESA I. QUIEPO | Chapter 7 |
| Debtor.<br>_____/ | |
| MARCIA T. DUNN, as Chapter 7 Trustee for the Estate of Teresa I. Quiepo, | |
| | Adv. Case. No.: 06-1916-BKC-LMI |
| Plaintiff,<br>v. | |
| TERESA I. QUIEPO, | |
| Defendant.<br>_____/ | |

**MEMORANDUM OPINION**

In this adversary proceeding Marcia T. Dunn, as Chapter 7 Trustee of the estate of Teresa I. Quiepo, seeks denial of the discharge of the Debtor, Teresa I. Quiepo pursuant to 11 U.S.C §§727(a)(3), (a)(4), and (a)(5). Based on the entire record,

including the testimonial and documentary evidence, and the arguments of the parties, and for the reasons set forth below, the Debtor's discharge is denied.

## JURISDICTION

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The following is the Court's findings of fact and conclusions of law following a trial conducted pursuant to Fed. R. Civ. P. 52, as made applicable to these proceedings by Fed. R. Bankr. P. 7052.

## BACKGROUND

**Procedural History**

Teresa I. Quiepo (the "Debtor") filed a chapter 7 petition for relief on October 4, 2005.  Marcia T. Dunn (the "Trustee") was appointed Chapter 7 Trustee.  On September 12, 2006, the Debtor was examined by the Trustee pursuant to Fed. R. Bank. P. 2004. The Trustee's Complaint Objecting to Debtor's Discharge (CP #1)(the "Original Complaint) was filed on September 15, 2006.

The Original Complaint included two counts by which the Trustee sought denial of the Debtor's discharge.  The first count sought denial of the Debtor's discharge pursuant to 11 U.S.C. §727(a)(4) based on the Debtor's alleged false oath due to her omission of the name "Teresa Iglesias" on her petition as another name which the Debtor had used in the past six years.  The second count sought denial of the Debtor's discharge pursuant to 11 U.S.C. §727(a)(5) for the Debtor's alleged failure to satisfactorily explain the loss of assets.  The Debtor filed an Answer and Affirmative Defenses (CP #6) on October 18, 2006, in which she denied the Trustee's allegations.

Prior to the start of trial, the Trustee filed a Motion to Amend the Complaint to Conform to the Evidence (CP #15) on December 27, 2006. The Trustee's Amended Complaint Objecting to the Debtor's Discharge (the "Amended Complaint") is identical to the Original Complaint save the addition of a third count seeking denial of the Debtor's discharge pursuant to Section 727(a)(3) based on the Debtor's alleged failure to keep or preserve recorded information from which the Debtor's financial condition or business transactions might be ascertained. I initially denied the motion, but subsequently I allowed the amendment pursuant to Fed. R. Civ. P. 15(b), made applicable to these proceedings by Fed. R. Bankr. P. 7015, finding that during the course of the trial, the Debtor consented to the admission of testimony with respect to the retention of records and documents.

Trial of the matter began on January 12, 2007, and continued on the afternoons of February 6th and 7th, 2007.

**Factual Background[1]**

The Debtor's petition lists her name as Teresa I. Quiepo. The petition also lists the name Teresa Iglesias Quiepo as having been used by the Debtor in the six years prior to filing the petition. The Debtor is a native of the Republic of Cuba. Her maiden name is Teresa Iglesias.

Although the Debtor testified she never used the name Teresa Iglesias, the Debtor, at the direction of her son, Jose Quiepo ("Jose"), took title to various parcels of

---

[1] The facts on which I rely are based primarily on documentary evidence, and in a limited way, on the testimony of the witnesses. I find that the Debtor's testimony was not credible with respect to her knowledge about the use of her name, and knowledge about her participation in a scheme orchestrated by her son and former daughter-in-law that has all the indicia of mortgage, bank and tax fraud (although I am not making a finding of fraud for purposes of this opinion). I find that neither Jose Quiepo or Ydania Fuentes Dienstag has any credibility and most of their testimony was not believable. I find Barbie Quiepo Pierro's testimony was more reliable but was not credible regarding her investments in, or her knowledge of her mother's involvement in, Jose and Ydania's property schemes.

3

real property between 1998 and 2001, using the name Teresa Iglesias. Jose along with Ydania Fuentes Deinstag ("Ydania"), Jose's former spouse and a creditor in the Debtor's bankruptcy case, allegedly used the Debtor as a nominee titleholder in connection with several real estate investment transactions. At trial the Trustee presented evidence of five real estate transfers between 1998 and 2001 where the Debtor used the name "Teresa Iglesias." Closing documents from three of the transfers indicated that the Debtor, using the name Teresa Iglesias, as Seller, received the net sales proceeds. No closing documents were introduced into evidence with respect to the other two transfers.

From 1998 to 2001 the Debtor held a First Union bank account ending in the numbers 8692 (the "First Union Account"). The record reflects that over one million dollars flowed through the First Union Account between 1998 and 2001. Ultimately, all funds were withdrawn from this account. The Debtor also jointly owned a Washington Mutual bank account, ending in the numbers 579-2 (the "Washington Mutual Account"), with her daughter, Barbara Quiepo Pierro ("Barbie"). After selling her homestead in May 2000, the Debtor deposited the net proceeds of that sale into the Washington Mutual Account. The record reflects that between July and November 2000 large amounts of cash were withdrawn and re-deposited into the Washington Mutual Account. Ultimately almost all the funds were withdrawn from the account.

## DISCUSSION

### I. §727(a)(3) – Failure to Keep or Preserve Financial Records

Section 727(a)(3) of the Bankruptcy Code requires that the court deny discharge to the debtor who:

4

> has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case

11 U.S.C. 727(a)(3).  The purpose of section 727(a)(3) is to provide creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge. *Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir. 1992)(citing 4 Collier on Bankruptcy ¶ 727.-03[1] (15th ed. 1979)).  The statute further ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history for a reasonable period of time.  *Id.; see also In re Juzwiak,* 89 F.3d 424, 427 (7th Cir. 1996).

In support of her claim for relief under section 727(a)(3), the Trustee alleges that the Debtor failed to adequately preserve or maintain adequate records from which the Debtor's financial condition may be ascertained.  (Amended Complaint at ¶ 35).  The Trustee specifically alleges that the Debtor was the title owner of numerous parcels of real property between 1998 and 2001, but could offer no information regarding the property transfers when questioned at her 2004 examination.

In order to establish a prima facie cause of action under section 727(a)(3), the Trustee must show: (1) that the Debtor failed to keep or preserve adequate records, and (2) that such failure makes it impossible to ascertain the Debtor's financial condition and material business transactions.  *Pereira v. Young (In re Young),* 346 B.R. 597, 608 (Bankr. E.D.N.Y. 2006).   Integral to a finding that the Debtor failed to keep or

5

preserve adequate records is a finding that the Debtor had a duty to keep or preserve the particular records of interest to the Trustee.

While it is true that debtors seeking discharge pursuant to chapter 7 of the Bankruptcy Code have a general duty to maintain comprehensible records, *Goldberg v. Lawrence (In re Lawrence)*, 227 B.R. 907 (Bankr. S.D. Fla. 1998), the nature and extent of that duty depends, for the most part, on the facts and circumstances of the particular case. *Krohn v. Frommann (In re Frommann),* 153 B.R. 113 (Bankr. E.D.N.Y. 1993). The court in *In re Frommann* recognized that "[i]f the debtor's transactions were such that others in like circumstances would ordinarily keep financial records, then she must show more than that she did not comprehend the need for them and must carry her explanation by way of justification to the point where it reasonably appears that because of unusual circumstances she was under no duty to keep them." 153 B.R. at 117 (internal citations and punctuation marks omitted). The inverse is also true: if the debtor's transactions were such that others in like circumstances would not ordinarily keep financial records, then the debtor is not under a duty to keep them. Only after the Trustee satisfies her burden of showing that the Debtor's records are insufficient to determine the Debtor's financial condition and business transactions, does the burden shift to the Debtor to produce evidence to rebut the proof of insufficient records, or to justify the absence of records. *In re Young,* 346 B.R. at 608.

Whether a debtor's failure to retain records was justified must be determined in light of all the circumstances of the case. *In re Young,* 346 B.R. at 610 (citing *Christy v. Kowalski (In re Kowalski),* 316 B.R. 596, 603 (Bankr. E.D.N.Y. 2004); *see also Cox v. Lansdowne (In re Cox),* 904 F.2d 1399 (9th Cir. 1990). In *In re Cox,* the United States

6

Court of Appeals for the Ninth Circuit recognized reliance on another as a viable justification for a debtor's failure to keep records in appropriate situations. In the *Cox* case, the debtor and her husband jointly owned at least fourteen parcels of real estate. Despite the fact that the debtor did not hold a professional license and was not actively involved in her husband's businesses, the bankruptcy court found the debtor had a shared duty with her husband to keep records. The Ninth Circuit, noting the debtor's ownership interest and status as a partner in at least two partnerships, and an officer in at least four of her husband's corporations, found no abuse of discretion in the bankruptcy court's finding. 904 F.2d at 1402. Nevertheless, the Ninth Circuit remanded the case for consideration of factors relevant to the determination of justification, including the debtor's reliance on her husband to keep records. *Id.* at 1403.

A "combination of factors including the debtor's personal situation and circumstances beyond the debtor's control" may lead to justification of a failure to keep or preserve records. *In re Young,* 346 B.R. at 610 (citing *Ochs v. Nemes (In re Nemes),* 323 B.R. 316, 327 (Bankr. E.D.N.Y. 2005). The Debtor here is 66 years old and speaks limited English. The Debtor testified that she obtained a high school education in Cuba. The Debtor's work experience consisted of somewhat menial jobs prior to her retiring and becoming a caregiver for her grandson. Both Jose and Ydania have substantial real estate investment experience and testified that they were in the business of purchasing and selling real estate, utilizing various friends and family members, including the Debtor, as nominee titleholders. While, as more fully discussed below, the record is not clear whether the Debtor's participation in these transactions

was merely as a "strawperson" or nominee titleholder, or also as an investor, the record is clear that the architects or masterminds of these transactions were Jose and Ydania. Moreover, the evidence shows the Debtor depended on her children with respect to financial matters.

The Trustee has demonstrated that the Debtor completely failed to maintain any books and records of any of these real estate transactions and there is no question that because of the Debtor's failure to maintain these records the Trustee was unable to ascertain the Debtor's financial condition. However, even if the Debtor had a duty to maintain these records[2], the Debtor's limited education and business experience, her general reliance on her children, and the fact that the real estate transactions were orchestrated by Debtor's son and former daughter-in-law, all support the Debtor's justifiable expectation that she need not maintain records of the real estate transactions. Accordingly, judgment will be entered against the Trustee on Count III of the Amended Complaint.

## II.    §727(a)(4)(A) – Knowingly and Fraudulently Making a False Oath

Section 727(a)(4)(A) of the Bankruptcy Code mandates the denial of discharge where the debtor has knowingly and fraudulently, in or in connection with the case, made a false oath or account. 11 U.S.C. §727(a)(4)(A).

In this case, the Trustee's section 727(a)(4)(A) claim is premised on the allegation that "[t]he Debtor knowingly and fraudulently made a false oath on her schedules by failing to list the name 'Teresa Iglesias,' which was a name used by the Debtor to take title to certain parcels of real property between 1998 and 2001."

---

[2] The Debtor admitted she did not file any tax returns during the time these real estate transactions occurred. While it seems self evident that these transactions would require a tax return be filed it is not clear from the record that the Debtor had an obligation to do so.

8

(Amended Complaint at ¶ 22). In order to prevail on her section 727(a)(4)(A) count, the Trustee must prove that the Debtor's oath was (1) knowingly and fraudulently made, and (2) related to a material fact. *Ingersoll v. Kriseman* (*In re Ingersoll),* 124 B.R. 116, 122 (M.D. Fla. 1991); *Rossi v. Dupree (In re Dupree)*, 336 B.R. 490, 494 (Bankr. M.D. Fla. 2005).

Some courts and commentators have held that fraudulent intent may be inferred from the totality of circumstances in the case, but analyze the omissions or nondisclosures to determine whether they were part of a scheme on the part of the debtor to retain assets for his own benefit at the expense of his creditors. *See In re Dupree*, 336 B.R. at 494*. See also In re Willis*, 243 B.R. 58 (9th Cir. B.A.P. 1999)(citing William L. Norton, Jr., NORTON BANKRUPTCY LAW AND PRACTICE 2D §74.11 (1997) and 6 Lawrence P. King et al., COLLIER ON BANKRUPTCY ¶ 727.04[1][B] (15th Ed. Rev. 1998)). However, the Eleventh Circuit has consistently held that "[d]eliberate omissions by the debtor may also result in the denial of a discharge." In *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616 (11th Cir. 1984)(citing *Raiford v. Abney (In re Matter of Raiford),* 695 F.2d 521, 522 (11th Cir. 1983). It makes no difference that the debtor does not intend to injure her creditors when she makes a false statement. *In re Chalik,* 748 F.2d at 618. To limit a finding of fraudulent intent to circumstances where the omission was made as a part of a scheme by the debtor to retain assets for her own benefit at the expense of her creditors, as suggested in *Dupree*, would ignore fraud upon the court through deliberate false statements made in or in connection with a debtor's bankruptcy case. Discharge should be "refused to the dishonest bankrupt as

punishment for his fraud and to prevent its continuance in the future." *In re Raiford,* 695 F.2d at 522 (quoting *Pugh v. ADCO, Inc.,* 329 F.2d 362, 365 (5th Cir. 1964).

### A. The Debtor's Omission of Her Maiden Name on the Petition Was a Deliberate False Oath

The Debtor argues that I need not reach the issue of whether the oath or account was knowingly and fraudulently made, as the Debtor listed the name, "Teresa Iglesias Quiepo," which encompasses "Teresa Iglesias." I reject this argument - the name "Teresa Iglesias" is not the same as the name "Teresa Iglesias Quiepo," and a trustee searching for assets under the name "Teresa Iglesias Quiepo," may not have uncovered the transactions involving Teresa Iglesias.

The Debtor's petition constitutes a statement under oath for purposes of the Trustee's objection to discharge pursuant to section 727(a)(4). *Caterpillar v. Gonzalez,* 305 B.R. 745, 754 (Bankr. S.D. Fla. 2003). The bankruptcy petition form requires that the debtor provide all names used by the debtor in the six years prior to filing including married, maiden, and trade names. The Debtor here failed to disclose the name "Teresa Iglesias." During trial the Debtor first testified, that she did not use the name, Teresa Iglesias, although she then identified her signature on each of the five deeds presented by the Trustee which were signed by her as "Teresa Iglesias."

Then the Debtor testified that she did not list this name on the petition because she did not believe she owned the properties involved. Jose initially testified that he directed the Debtor to use the name "Teresa Iglesias" in connection with the real estate transactions by mistake because he was in a rush, but later changed his testimony to assert that the use of the name "Teresa Iglesias" was directed by Ydania, in order to conceal her relation to the Debtor, as Ydania was the mortgage broker in many of the

10

transactions. The Debtor knew she had taken title to real property under the name "Teresa Iglesias" within the six years prior to filing the petition.[3] She attended real estate closings, signed closing documents and accepted checks as Teresa Iglesias. At the time the Debtor petitioned for relief under the Bankruptcy Code she was under an obligation to truthfully and completely disclose her identity.

Regardless of whether the Debtor used the name "Teresa Iglesias" at the direction of her son or then-daughter-in-law or whether the Debtor believed she did not have an ownership interest in the properties, I find the Debtor knew she had used the name "Teresa Iglesias" within the six years prior to the Petition Date and deliberately omitted this information from her bankruptcy petition. I also find the Debtor's omission was for the purpose of concealing her participation in the real estate transactions. The Trustee has met her burden of proving the first element in her section 727(a)(4)(A) claim, a knowingly and fraudulently made false oath .

## B. The Debtor's False Oath Was Material

A false oath is material, for purposes of denying discharge, if it bears a relationship to the debtor's (1) business transactions or estate, or (2) concerns the discovery of assets, business dealings, or the existence and disposition of property. *In re Chalik,* 748 F.2d at 618; *see also Tighe v. Valencia (In re Guadarrama),* 284 B.R. 463, 473 (C.D. Cal. 2002)(holding a false statement or omission is material if it concerns information that would aid in understanding the debtor's affairs). In *In re Guadarrama,* the debtor listed false Social Security numbers on a joint petition. A California District Court reversed the bankruptcy court's finding that the listing of false

---

[3] If, in fact, the Debtor had not noticed that her name was listed on these documents as Teresa Iglesias Quiepo rather than as Teresa Iglesias, then it is more likely than not she would have signed the deeds using her full name, not the name listed on the documents.

Social Security numbers was not material because an investigation of the debtor's valid Social Security number would not have revealed information that would have resulted in the denial of discharge. 284 B.R. at 476. "Materiality is judged not by the *actual* effect of the fraudulent misrepresentation or concealment, however, but by the effect it was *capable* of producing." *Id.* at 475 (emphasis in original).

In *In re Chalik,* an individual debtor, in filing his petition, omitted reference to twelve corporations in which he held positions of officer, director, or major stockholder during the six years prior to his bankruptcy. The Eleventh Circuit, noting that at least five of the twelve corporations omitted from the bankruptcy petition had combined total assets in excess or $2.1 million and monthly income in excess of $250,000 within two years of the bankruptcy filing, and that the debtor's attorney reviewed the entire petition with the debtor, found that the bankruptcy court could reasonably infer that the debtor omitted information necessary to determining his financial condition. *Id.* at 619. The Eleventh Circuit rejected the debtor's argument that the omitted information was not material.

> The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. … The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act [sic].

*Id.* at 618. Likewise, this Court must reject the Debtor's suggestion that because the properties held under the name "Teresa Iglesias" were not assets over which the Debtor had control, or in which the Debtor believes she had any real interest, the omission was not material.

I find that the name Teresa Iglesias is directly related to the Debtor's participation in numerous real estate transactions, as a "strawperson," investor, or otherwise. The record evidence is that the Debtor held title to at least five parcels of real property under the name "Teresa Iglesias" between 1998 and 2001. The omission of the name "Teresa Iglesias" was an impediment to the Trustee's ability to discover transfers of real property and significant proceeds. Regardless of whether discovery of the real property transactions would have revealed that the Debtor was merely a nominee titleholder or received minimal benefits, omission of the name by which the Debtor knowingly held title to property interfered with the Trustee's ability to determine the Debtor's eligibility for discharge. Accordingly, I find that the Trustee has proved materiality of the omission. Denial of the Debtor's discharge is appropriate on these grounds, and judgment will be entered in favor of the Trustee on Count I of the Amended Complaint.

### III.    §727(a)(5) – Failure to Explain the Loss of Assets

Section 727(a)(5) requires the bankruptcy court to deny discharge to any debtor who has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. 11 U.S.C. §727(a)(5). The Trustee has the initial burden of proving that the Debtor at one time owned substantial and identifiable assets that are no longer available for her creditors. *In re Gonzalez,* 302 B.R. at 755. Once the Trustee has established a loss of assets, the burden then shifts to the Debtor to provide a satisfactory explanation for the loss. *Id.*

### A.    The Trustee has Satisfied Her Initial Burden to Establish a Loss of Assets

The Trustee argues the Debtor should lose her discharge because she failed to adequately explain (a) the use of over one million dollars that flowed through the First

Union account; (b) the use of the funds on the Washington Mutual account, including not only the proceeds from the sale of her homestead, but also other funds, totaling $138,200.00, withdrawn from, and deposited into that account, and (c) the disposition of over $274,410.35 in sale proceeds from the disposition of the various real estate transactions in which she acted, at least, as a nominee owner.  While I find the Trustee met her initial burden with respect to both the accounts and the real estate, I also find that the Debtor provided satisfactory explanations regarding the disposition of the funds in the bank accounts.

The Trustee alleges that the Debtor was the owner of the First Union Account, that over one million dollars was deposited and withdrawn from the account, the Debtor signed checks allowing the withdrawals, and despite admitting signing the checks, the Debtor testified at her 2004 examination that she had no knowledge what the monies in the First Union Account were used for.  (Amended Complaint at ¶¶ 10-13).

I find that the evidence does not support the Trustee's allegations that the Debtor controlled the First Union Account.  While it is possible that some money belonging to the Debtor was deposited in the First Union Account, and perhaps some withdrawals were for the benefit of the Debtor, the evidence shows that the First Union Account was used by Jose and Ydania as part of their real estate schemes and for their personal benefit, and was actually their bank account.   Moreover, the evidence at trial shows that most of the funds were not paid to the Debtor, and the amount paid to the Debtor, whether used by her or not, was relatively small given the passage of time since the account was closed.

The Trustee also alleged that in 2000 the Debtor jointly owned the Washington Mutual Bank Account with her daughter, Barbie, into which account the Debtor deposited the proceeds from the sale of her homestead, one hundred twenty-four thousand six hundred seventy-nine dollars and forty-nine cents ($124,679.49),[4] and subsequently an additional one hundred thirty-eight thousand two hundred dollars was deposited into the Washington Mutual Account ($138,200.00).  Although the Washington Mutual Account was a joint account of the Debtor and her daughter, the Debtor testified at her 2004 examination that she did not know what happened to the funds.  The Washington Mutual Account statements revealed withdrawals totaling $135,053.14 and deposits totaling $143,819.06.  The transaction history is consistent with Barbie's testimony that she withdrew and loaned account funds to Jose to purchase real estate. The $143,819.06 in deposits includes the $138,200.00 objected to by the Trustee and represented a return of the funds lent plus other money Jose gave to his sister to buy a new house.  While I find that some of the money Jose "gifted" to Barbie was actually her or the Debtor's share of sale proceeds from whatever deal or deals for which Jose used the money Barbie "lent" him, I find credible Barbie's testimony that all the proceeds of the Washington Mutual Account were ultimately used by Barbie to purchase the property located at 8101 S.W. 136th Street, Miami, Florida, in which property Barbie and the Debtor lived.  That property was ultimately sold, and Barbie, through her husband, Angel Pierro,[5] used the proceeds to buy two other properties, one in which the Debtor lives, and one in which Barbie lives with her

---

[4] The Trustee alleged $124,679.49 was received by the Debtor as proceeds from the sale of her homestead.  The record evidence reflects the actual amount was $124,575.49.  A deposit in this amount was made into the Washington Mutual Account on May 1, 2001.
[5] Continuing the family tradition of buying property in other people's names.

husband. Accordingly, I find the Debtor has provided a reasonable explanation of the disposition of the funds from the Washington Mutual Account.

Finally, the Trustee alleged that the Debtor's inability to account for the properties titled under her name and the sales proceeds she was entitled to receive after attending various real estate closings is sufficient grounds for denial of the Debtor's discharge pursuant to section 727(a)(5). The Debtor argues that she did not believe she was the owner of the properties being sold, did not receive the proceeds of the respective sales, and therefore has not lost or dissipated her assets such that denial of discharge may be sought pursuant to section 727(a)(5). Resolution of this issue comes down to who had the burden of proof. *See Hawley v. Cement Industries, Inc. (In re Hawley),* 51 F.3d 246 (11th Cir. 1995). It was the Trustee's burden to show, by a preponderance of the evidence, that the Debtor had assets whose loss she failed to adequately explain. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Once the Trustee met that burden, which, as more detailed below, I find she did, the burden shifted to the Debtor to explain the loss of those assets. *Id.* This, the Debtor failed to do.

Whether or not the Debtor believed she was the owner of the properties transferred is not the test by which I must gauge the Debtor's responsibilities as mandated by section 727 of the Bankruptcy Code. It is well settled that the titleholder of real property is presumed to be the owner of the property. *Woolum v. Adamovich (In re Woolum),* 279 B.R. 865, 869 (Bankr. M.D. Fla. 2002)(citing *Cannova v. Carran,* 92 So.2d 614 (Fla. 1957)). Accordingly, the Debtor may properly be held accountable for the loss of such assets pursuant to section 727(a)(5). Although the presumption of ownership may be overcome, the task belongs to the Debtor. *See In re Lawrence,* 227

B.R. at 915. Once the Trustee identifies the lost assets, the burden shifts to the Debtor to provide a satisfactory explanation of the loss. *Stapelton v. Yanni (In re Yanni),* 354 B.R. 708, 716 (Bankr. E.D. Pa. 2006).

The Trustee proved that the Debtor had, during the years 1998-2001, held title to at least five pieces of property. The Trustee also proved that during that time period, all five properties were transferred and the closing statements from three of the five transfers show that Debtor received closing proceeds in the aggregate of $274,410.35.

In order to be deemed satisfactory, a debtor's explanation for the loss of assets must convince the judge. *Hawley v. Cement Industries, Inc. (In re Hawley),* 51 F.3d 246, 249 (11th Cir. 1995). "Vague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are unsatisfactory." *Id.* (quoting *In re Chalik,* 748 F.2d at 619). At trial, the Debtor was unable to account for the properties titled in her name or the proceeds she was entitled to receive after attending several closings, even though Jose claims this information could have been easily obtained from the closing agent.[6]

The Debtor identified her signature on the deeds the Trustee introduced into evidence, but could not recall how she received the funds to purchase the properties and claimed, other than the sale of her homestead, to have no knowledge of the transactions. The Debtor testified that she has sold properties within the past nine years, but did not recall how many and did not produce documents explaining the transfer of the properties or disposition of the sale proceeds in response to the Trustee's

---

[6] Jose made much of the fact that the Trustee could have subpoenaed the records of title companies to determine the distribution of the sale proceeds. The Trustee is, however, under no duty to reconstruct the financial affairs of the Debtor. *In re Frommann,* 153 B.R. at 117.

request. In 2000 and 2001 alone the Debtor was entitled to receive at least $274,410.35 in cash from the sale of the properties (other than her homestead). At trial the Debtor acknowledged her signature on closing documents, but testified any checks she may have received she would have given to her son Jose. She testified she did not receive any proceeds. Jose in turn testified that he would routinely direct the closing agent as to the disbursement of the sale proceeds to himself, to Ydania, and their investors. Jose also testified that persons acting as "strawmen" or nominee titleholders would usually receive compensation of approximately $5000 per transaction, but that, even though every other person acting as nominee received such a payment, the Debtor never received such compensation. Jose testified that the Debtor never invested in any of the transactions. Jose and Ydania both testified that the Debtor held these properties as the "strawman," the nominee titleholder. However, there was conflicting testimony by them as to whether the Debtor received any benefit from the underlying real estate transactions. Although I find that the Debtor did hold these properties as the nominee titleholder, I find that she failed to meet her burden of explaining the disposition of the closing proceeds when the properties were sold. Since there is no way to determine how much the Debtor actually received from the proceeds, in the absence of any evidence to the contrary, I must assume the Debtor may have received the entire amount or a significant portion thereof.

It was the Debtor's burden to produce the documents explaining how the proceeds of these sales were distributed, and without documentation to corroborate the testimony, the Debtor is unable to sustain her burden of providing a satisfactory explanation. *See In re Chalik,* 748 F.2d at 619. Moreover, I find it unlikely that every

person involved in these transactions, including Ydania's parents and siblings, received some sort of consideration for participating in these transactions, with the sole exception of the Debtor and Barbie. Accordingly, I find the Debtor has failed to satisfactorily explain the loss of assets, particularly real property titled in her name and transferred by her and the sale proceeds therefrom.

At first blush it may seem anomalous that a debtor can be absolved of the responsibility to keep or maintain certain records pursuant to section 727(a)(3), but nevertheless be required to produce some records in order to sustain her burden under section 727(a)(5). The bankruptcy court in *In re Yanni* considered this issue and noted that "unlike § 727(a)(3), the plain language of § 727(a)(5) makes clear that the debtor cannot offer a justification for the failure to satisfactorily explain the loss of assets." 354 B.R. at 716. "A debtor facing an objection to discharge under § 727(a)(5) may very well have to gather or produce documents and records which she might otherwise not ordinarily keep and in fact may be justified for failing to keep under § 727(a)(3). She may well have to hire professionals to locate her assets if she is unable to do so herself." *Id.* (quoting *In re Mezvinski,* 265 B.R. 681, 690-91 (Bankr. E.D. Pa. 2001)). In this case, the Debtor having failed to present satisfactory evidence to explain the loss of assets, denial of discharge and judgment in favor of Trustee on Count II of the Amended Complaint is appropriate.

## **CONCLUSION**

Bankruptcy is a privilege, not a right, but a benefit of that privilege is the right to a discharge. "[A] central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a

19

new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner,* 498 U.S. at 286 (internal citation and quotation marks omitted). Consequently, denial of discharge is a serious matter. *Colonial Auto Center v. Tomlin (In re Tomlin),* 105 F.3d 933, 937 (4th Cir. 1997)(noting that a permanent bar to discharge is at times referred to as the "capital punishment of bankruptcy," for it removes much of the benefit of the bankruptcy system). The opportunity for a completely unencumbered new beginning is limited, however, to the "honest but unfortunate debtor." *Id.; Grogan v. Garner,* 498 U.S. at 287.

The Trustee has succeeded in proving the Debtor has forfeited the privilege of discharge. The Debtor has failed to meet her burden to convince this Court otherwise.

A separate final judgment consistent with this Memorandum Opinion shall be entered by the Court.

###

Copy to:
Daniel N. Gonzalez, Esq.

*Attorney Gonzalez shall serve a conformed copy of this order on all interested parties and filed a Certificate of Service with the Clerk of Court.*